UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTHUR RAY DEERE, Sr.,

    Plaintiff,

v.

JOE LIZARRAGA,

    Defendant.

No. 2:16-cv-1694 DB P

ORDER AND FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges the air quality at Mule Creek State Prison ("MCSP") was so poor that it worsened his Chronic Obstructive Pulmonary Disease ("COPD") and his overall health. Before the court is defendant's motion for summary judgment. For the reasons set forth below, this court will recommend defendant's motion be granted.

## BACKGROUND

### I. Allegations of the Second Amended Complaint

Plaintiff is currently incarcerated at the California Institution for Men ("CIM"). This case is proceeding on the Eighth Amendment claim in plaintiff's second amended complaint ("SAC"). (ECF No. 19.) Plaintiff alleges defendant Lizarraga, the warden at MCSP, was aware that plaintiff was a "high risk medical inmate with chronic COPD and emphysema" but nonetheless exposed plaintiff to "hazardous materials such as dust," "irritating pollens," and "asbestos

1

generated by rock crushing quarries in the area." Plaintiff contends the air circulation and filtering systems at MCSP were inadequate. Plaintiff alleges he suffered daily asthma attacks and constant stress that aggravated his heart condition and that his lung condition worsened. Plaintiff seeks compensatory and punitive damages.

**II.     Procedural Background**

On screening, this court found plaintiff's allegations sufficient to state a claim that defendant was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment. (See ECF No. 21.) On February 28, 2018, defendant filed an answer. (ECF No. 28.) On January 14, 2019, defendant filed the pending motion for summary judgment. (ECF No. 61.) Plaintiff filed an opposition (ECF No. 64) and defendant filed a reply (ECF No. 66). Plaintiff filed a "supplemental response" on March 14, 2019. (ECF No. 67.)

The Local Rules do not authorize the routine filing of a response to a reply brief, or a "sur-reply." E.D. Cal. R. 230(l). A district court may allow a sur-reply "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." Hill v. England, No. CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005); accord Norwood v. Byers, No. 2:09-cv-2929 LKK AC P, 2013 WL 3330643, at *3 (E.D. Cal. July 1, 2013) (granting the motion to strike the sur-reply because "defendants did not raise new arguments in their reply that necessitated additional argument from plaintiff, plaintiff did not seek leave to file a sur-reply before actually filing it, and the arguments in the sur-reply do not alter the analysis below"), rep. and reco. adopted, 2013 WL 5156572 (E.D. Cal. Sept. 12, 2013).

In the present case, nothing about defendant's reply to the motion for summary judgment provides a basis for the filing of an additional brief.[1] Therefore, the undersigned will order plaintiff's "supplemental response" stricken from the record.

////

////

////

---

[1] Even if the court considered plaintiff's sur-reply, the arguments raised in it do not alter the court's analysis of the issues raised in the motion for summary judgment.

2

# MOTION FOR SUMMARY JUDGMENT

## I. General Legal Standards

### A. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its

pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

////

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted)

**B. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the

////

involvement of official personnel in civil rights violations are not sufficient. See <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

## II. Statement of Undisputed Facts

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 61-2.) Plaintiff's filing in opposition to defendants' motion for summary judgment fails to comply with Local Rule 260(b). (ECF No. 64.) Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff's opposition to the summary judgment motion is a brief and exhibits.

In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in defendant's DSUF or has shown facts that are not opposed by defendants. The court considers the statements plaintiff made in his verified SAC, of which he has personal knowledge, the transcript of plaintiff's deposition submitted by defendant, and exhibits provided by both parties.

Below, the court lists the undisputed, material facts. Disputed material facts are addressed in the discussion of the merits of defendants' motion below.

### A. Undisputed Facts re MCSP

1. MCSP was built and opened over thirty years ago. (Lizarraga Decl. (ECF No. 61-5) ¶ 2.)
2. Plaintiff was incarcerated at MCSP from September 2014 to February 2017. (DSUF #1.)
3. Each housing unit at MCSP contains three sections, with a separate air system for each section. (DSUF #2.)
4. The type of air systems used at MCSP have been used in prisons throughout the state for many years. (DSUF #3.)

////

6

5. The air systems are serviced on a quarterly basis, at which time the belts and high-efficiency filters are changed and the duct work is checked for any leaks. (DSUF #4.)

6. The filters used by the air systems at MCSP are the same as those used in ordinary residential forced air systems. (DSUF #5.)

**B. Undisputed Facts re Plaintiff**

1. Plaintiff suffers from COPD, a term used to describe emphysema and/or chronic bronchitis. (DSUF #25.) He believes he had his first attack of COPD in 1968. (DSUF #26.)

2. Plaintiff estimates that he smoked a pack of unfiltered cigarettes every day for twenty to thirty years. (DSUF #24.)

3. In 2010, when he was 57 years old, tests showed that plaintiff had the lung function of a 103-year-old person. (DSUF #28.)

4. In 2015, plaintiff was diagnosed with lung nodules. (DSUF #29.) A doctor told him they were the result of plaintiff's drug use. (DSUF #32.)

5. Plaintiff has described himself as a regular drug user and drinker prior to his incarceration. (DSUF ##33, 34, 36.)

**C. Undisputed Facts re Defendant**

1. Defendant has been the warden at MCSP since 2013. (Lizarraga Decl. (ECF No. 61-5) ¶ 2.)

2. Defendant is not involved in the maintenance of the air system at MCSP. (Id. ¶ 6.)

3. Defendant had no knowledge that any rock-crushing quarries near MCSP were generating asbestos. (Id. ¶ 2.)

4. Defendant does not provide medical care to inmates at MCSP. (Id. ¶ 5.)

5. MCSP has policies to address the discovery of asbestos. If it is believed that materials within the prison contain asbestos, they are not disturbed and then are tested by a licensed consultant. If any materials test positive for asbestos, they are abated. (Id. ¶ 3.)

**III. Analysis**

Defendant makes three primary arguments: (1) no evidence shows that plaintiff was exposed to any hazardous substance at MCSP; (2) no evidence shows that plaintiff's physical ailments are the result of any hazardous substance he came into contact with at MCSP; and (3) no evidence shows that defendant knew about plaintiff's health conditions or that he knew about hazardous substances at MCSP.

**A. Legal Standards for Eighth Amendment Deliberate Indifference**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To state a claim for threats to safety or health, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Id. at 834; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate

8

safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The Ninth Circuit has noted that it is "uncontroverted that asbestos poses a serious risk to human health." Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995). Exposure to asbestos can, thus, be the basis for a § 1983 claim.[2]

### B. Has Plaintiff shown there are Material Issues of Fact?

#### 1. Was Plaintiff Exposed to Hazardous, Airborne Substances at MCSP?

Initially, this court notes that plaintiff complains that three types of airborne substances at MCSP caused him harm: asbestos, dust, and allergens. However, plaintiff makes no showing that his exposure to dust and allergens rose to the level of a serious risk of harm. Even if it does, for the reasons stated below, plaintiff fails to show defendant was aware that plaintiff had medical conditions that made him particularly susceptible to the effects of dust and allergens. Accordingly, the court focuses here, as the parties have, on the issue of airborne asbestos.

While plaintiff alleged in his complaint that rock quarries in the MCSP area were causing asbestos dust, plaintiff now contends that MCSP was built upon "a large deposit of asbestos." (ECF No. 64 at 3.) As proof, he provides a copy of an October 17, 2018 letter and materials he received from an Air Pollution Control Officer at the Amador Air District. (Id. at 54-61.) The officer informed plaintiff that he found no documentation regarding asbestos contamination from rock quarries in the area near MCSP. However, he provided plaintiff with a copy of an Asbestos Dust Mitigation Plan Application regarding the MCSP "Infill Complex." (Id. at 54.) A second letter provided to plaintiff shows that the plan was approved by the Air District. (Id. at 55.)

////

---

[2] This court has identified plaintiff's claim both as one for deliberate indifference to his medical needs. (see ECF No. 59 at 2) and as one for deliberate indifference to plaintiff's conditions of confinement (see ECF No. 21 at 2-30). The essential aspects of both claims are the same. Both arise under the Eighth Amendment and, to succeed on either claim, plaintiff must show that defendant was aware of plaintiff's particular health problems, aware that he was being exposed to hazardous materials, and deliberately indifferent to plaintiff's needs in failing to address the poor air quality at MCSP.

9

The Mitigation Plan was prepared by Granite Construction, who appears to have been doing work for the California Department of Corrections and Rehabilitation ("CDCR") at MCSP from 2014 to 2016. (Id. at 56.) According to the Mitigation Plan, Granite Construction discovered asbestos on June 12, 2014, a few months before plaintiff arrived at MCSP. (Id.) The Plan then describes the steps Granite Construction intended to take to prevent the spread of asbestos. (Id. at 57-61.)

Plaintiff also provided the court with pieces of paper upon which he says he had trapped "pollutants" from the air vents of his cell. (ECF No. 64 at 63, 64.) However, plaintiff provides no scientific or other evidence analyzing anything that might be on those papers. While plaintiff has complained repeatedly that defendant should be responsible for conducting that testing, plaintiff's motion asking that defendant be required to do so was denied. (ECF No. 50 at 5-6.) Plaintiff has not now, or previously, provided any authority that would require defendant to pay for that testing.

To the extent plaintiff is claiming that the air system in the housing units at MCSP were inadequate, he presents no evidence to support that claim or to contradict defendant's evidence showing that the air system is a typical system and that air filters are changed quarterly.

Finally, plaintiff provides no evidence to show that asbestos dust from the Granite Construction Project, or anywhere else, was present in the air at MCSP when he was there. Accordingly, this court finds plaintiff has failed to present sufficient evidence to create a material issue of fact about his exposure to asbestos dust while at MCSP.

**2. Are any of Plaintiff's Physical Ailments the Result of Exposure to Hazardous Materials while he was at MCSP?**

Plaintiff contends that before he arrived at MCSP, he had never been diagnosed with emphysema and there was no evidence that he had "focal infilterate, cavitary lesions, lung nodules or active disease." (ECF No. 64 at 4.) He contends his "lungs were clear" before he arrived at MCSP. (Id. at 11.) He states that after June 17, 2015, nodules began spreading through his left lung. (Id. at 4.) The nodules have now spread to his right lung as well. (Id. at 11.)

Plaintiff states that the nodules, his constant fatigue, and his anemia are all signs of mesothelioma.[3] (Id.)

Defendant presents a declaration of Dr. Bennett Feinberg. Feinberg is the Chief Medical Consultant for California Correctional Health Care Services. He has experience treating patients with, among other things, lung disease. Feinberg reviewed plaintiff's medical records starting in October 2007, when plaintiff was first incarcerated for his current conviction. He also considered plaintiff's SAC and deposition transcript. (Feinberg Decl. (ECF No. 61-4) ¶ 2.) Feinberg found the following in plaintiff's medical records[4]:

- In December 2008, a physician found that plaintiff's primary chronic medical condition was COPD. The physician noted that plaintiff reported a history of more than 40 years of smoking tobacco, hepatitis C, intravenous drug use, alcoholism, arthritis, and foot pain. According to Feinberg, COPD describes emphysema and/or chronic bronchitis. (Id. ¶ 9.)
- In 2009, plaintiff began to be seen by a pulmonologist for his COPD. In January 2010, testing showed that plaintiff had "moderate obstruction and a lung age of 103 years." (Id. ¶ 10.)
- In 2012, the pulmonologist reviewed plaintiff's chest X-rays which showed "mild hyperinflation, commonly seen in COPD, with no active disease including no lung nodules noted." (Id.)
- In January 2013, plaintiff was transferred to CIM. While at CIM, plaintiff had a heart attack in November 2013. (Id. ¶ 11.)
- In October 2014, plaintiff submitted a health services request form asking MCSP to test him for asbestos contamination which plaintiff felt he had suffered at CIM. Plaintiff submitted multiple forms over the next several months asking for care and

---

[3] The Mayo Clinic's website describes mesothelioma as a "type of cancer that occurs in the thin layer of tissue that covers the majority of your internal organs." It often affects the tissue around the lungs. The "primary risk factor for mesothelioma" is asbestos exposure. https://www.mayoclinic.org/diseases-conditions/mesothelioma/symptoms-causes/syc-20375022.
[4] A copy of plaintiff's medical records for 2013 to 2018 are attached to Feinberg's declaration. (ECF No. 61-4 at 15-114.)

11

testing to determine whether he had been injured by asbestos exposure at CIM. (Id. ¶¶ 12-15.)

- In January 2015, plaintiff had a chest X-ray. It showed "a few very small nodular opacities" on the left lung that had not been present in the 2012 X-ray. (Id. ¶¶ 16-17.)

- In June 2015, plaintiff had a CT scan of his chest. The scan was "notable for 'severe pulmonary emphysema' and 'several subcentimeter noncalcified nodules in the left lung.'" (Id. ¶18.)

- In August 2015, plaintiff had a telemedicine consultation with a pulmonologist. The pulmonologist noted, among other things, plaintiff's "100-pack-year [two packs per day] smoking history, history of extensive drug use consisting of intravenous heroin and amphetamine." (Id.)

- The pulmonologist concluded that plaintiff had "a history of severe chronic obstructive pulmonary disease, which is combination of extensive history of smoking in conjunction with heavy drug use. . . . Nonspecific noncalcified nodules in the left lung." (Id. ¶ 19.)

- Plaintiff had an in-person appointment with the pulmonologist in October 2015. The pulmonologist's notes reflect that "CT scan of chest was personally reviewed by myself dated 6/17/2015, which is showing bilateral bullous emphysema with nonspecific 2-6 millimeter nodules on CT scan of chest, which are likely based on patient's prior intravenous drug use causing granulomatous changes." (Id. ¶ 20.)

- The pulmonologist noted plaintiff's extreme apprehension about eventually developing a malignancy and recommended a follow-up CT scan in one year. Plaintiff saw a pulmonologist several times thereafter. That doctor's notes are similar. (Id. ¶¶ 20, 21.)

- Plaintiff had a follow-up CT scan in March 2016. It showed "multiple nodules scattered throughout the left lung" that appeared "stable." "No new or enlarging

////

|   |   |
|---|---|
| 1 | pulmonary nodule or mass is identified." The pulmonologist recommended |
| 2 | another follow-up CT scan in six months. (Id. ¶ 22.) |

- Plaintiff saw the pulmonologist again in October 2016. The doctor provided the following assessment in his notes: "patient with long-standing history of severe chronic obstructive pulmonary disease, which is attributed to history of heavy smoking as well as extensive drug use in the past. Bilateral emphysematous changes as well as nonspecific 2-6 mm nodules seen on CT imaging of the chest on 6/17/2015, the repeat CT scan done this month not showing any interval change. The nodules are benign." (Id. ¶ 23.)
- After plaintiff was transferred out of MCSP and back to CIM in February 2017, he saw a primary care physician. Plaintiff asked the physician to have his lungs tested for asbestos. The physician declined because plaintiff's CAT scans "are stable" and he has "no history of asbestos exposure in the past." (Id. ¶ 24.)
- In April 2018, plaintiff had another CT scan of his chest. The doctor found new nodules on plaintiff's lungs and was concerned about infection. After plaintiff was treated with antibiotics, another CT scan was done in September 2018. It showed the previous signs of infection were "largely resolved" and found no new or enlarging nodules. (Id. ¶ 25.)

Dr. Feinberg concluded that plaintiff's medical records showed no indication that an exposure to hazardous materials played a role in the development of the nodules on plaintiff's lungs. In addition, any heart condition plaintiff suffered was caused by the heart attack he had in November 2013 while at CIM. Feinberg found that, to the extent plaintiff's symptoms of COPD worsened while at MCSP, doctors appeared to attribute it to plaintiff's noncompliance with his treatment regimen. (Feinberg Decl. (ECF No. 64-1) ¶¶ 26-29.) Finally, Feinberg noted that "there is no medical evidence that Plaintiff suffered from mesothelioma." (Id. ¶ 29.) Feinberg distinguished a mesothelioma tumor from the small nodules seen on plaintiff's lungs.

Plaintiff opposes Feinberg's conclusions by arguing that Feinberg is not qualified to diagnose mesothelioma. He also argues that Feinberg has never examined plaintiff and,

13

therefore, has no legitimate basis upon which to diagnose him. Plaintiff sent the court a copy of a book entitled "100 Question and Answers about Mesothelioma.[5]" He contends that the book shows that mesothelioma is hard to diagnose and that a doctor is not qualified to be a mesothelioma specialist until they have treated fifty patients per year. (ECF No. 64 at 13-14.) While that may be true, plaintiff presents no medical authority for his argument that his symptoms are signs of mesothelioma.

Further, plaintiff does not, and cannot dispute, that his medical records show he has never been diagnosed with exposure to asbestos, asthma, or mesothelioma. They further show that plaintiff was suffering from serious COPD before he arrived at MCSP. The records also confirm that lung nodules started showing up in 2015, when plaintiff was at MCSP. However, plaintiff presents no evidence that the development of those nodules was due to any environmental hazard he experienced at MCSP. Plaintiff has not established a dispute of material fact on this issue.

### 3. Did Defendant know of Plaintiff's Health Problems or of Hazardous Airborne Substances at MCSP from 2014 to 2016?

Plaintiff simply argues that defendant "must have" known about the asbestos found by Granite Construction because he was the warden at that time. The court does not find that statement necessarily true. According to the Mitigation Plan provided by plaintiff, Granite Construction was employed by CDCR, not directly by MCSP. The parties present no evidence to show defendant was involved in the construction work or was aware of the details of it.

In his declaration, Lizarraga states that he had no knowledge that plaintiff had been exposed to asbestos, or any other hazardous materials, while at MCSP. (Lizarraga Decl. (ECF No. 61-5) ¶¶ 2, 4.) Plaintiff presents no evidence to the contrary. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. Further, even assuming staff at

---

[5] Plaintiff states that he had to send the court the entire book because the prison librarian refused to copy pages of the book for him due to copyright laws. He also states that he does not have a copy to send to defendant.

MCSP had knowledge of hazardous materials there, that knowledge cannot be imputed to defendant simply because he is the warden. See Fayle, 607 F.2d at 862 (supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of respondeat superior). Plaintiff's factual showing is insufficient to create a material issue of fact that defendant knew about his health problems or knew that plaintiff had been exposed to hazardous airborne materials.

### IV. Conclusion

To survive summary judgment, plaintiff must provide sufficient factual support for his claims. While this court must draw "all reasonable inferences" from the evidence in plaintiff's favor, it may only do so where plaintiff has provided a factual predicate upon which that inference may be based. See Richards, 602 F. Supp. at 1244-45. Plaintiff's filings, and his deposition testimony, show that plaintiff felt the air quality at MCSP was poor, that it contained allergens, and that it "must have" contained asbestos. Plaintiff offers nothing besides his feeling that these allegations are true. The evidence showing that some asbestos mitigation was taking place during construction at or near MCSP when plaintiff was there does not establish that asbestos was, in fact, in the air at that time. Further, plaintiff fails to show any of his health problems are the result of any airborne materials at MCSP or that defendant had any knowledge of either his health problems or that the air quality was inadequate.

For these reasons, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall randomly assign a district judge to this case; and
2. Plaintiff's Supplemental Response (ECF No. 67) shall be stricken from the docket.

Further, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 61) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 21, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/deer1694.msj fr